UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD BERGMAN, et al.,

        Plaintiffs,

                                                        CASE NO. 07-15190
v.                                                 HONORABLE DENISE PAGE HOOD

ROANOKE COMPANIES GROUP,
INC., et al.,

        Defendants.
                                     /

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENTAND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL EXPERT REPORT AND DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S PRETRIAL ORDER AND FOR SANCTIONS AND SETTING A FINAL PRETRIAL DATE FOR OCTOBER 31, 2011**

**I.    INTRODUCTION**

        This matter is before the Court on Defendant Aerofil Technology, Inc.'s ("Aerofil") Motion for Summary Judgment **[Docket No. 48, filed on January 10, 2011]**. Plaintiff's responded on February 23, 2011**[Docket No. 51]**, and Defendant replied on March 1, 2011 **[Docket No. 48]**. Also before the Court is Plaintiff's Motion for Leave to File Supplemental Expert Report **[Docket No. 74, filed May 12, 2011]** and Defendant's Motion to Strike Plaintiff's E.D. Mich. L.R. 16.2 Pretrial Order and for Sanctions **[Docket No. 80, filed June 6, 2011]**.

**II.    STATEMENT OF FACTS**

        On December 6, 2007, Plaintiffs Richard and Donna Bergman filed a Complaint in this Court, alleging the following claims against Defendant Aerofil: Count I, Product Liability/Product Defect; Count II, Negligence; Count III, Violations of Michigan Consumer

1

Protection Act; Count VI, Exemplary/Punitive Damages; and Count VII, Violations of Federal Consumer Product Safety Act.

Defendant Aerofil, a manufacturer of SnS, is a contract packager that specializes in filling and pressurizing spray cans. Stand 'n Seal ("SnS") was a spray-on grout sealer formulated by SLR, Inc. The active ingredient in SnS was originally Zonyl 225, which Aerofil identified as SLR Premix 51-335. SLR caused Zonyl to be shipped to Aerofil for packaging pursuant to a proprietary formula. Aside from the active ingredient, Aerofil provided the other materials, determined the propellant, and type of can or nozzle used. The label, warning, and instructions were authored by Roanoke Companies Group, Inc. ("Roanoke"), the distributor of SnS. SnS was retailed by Home Depot, USA, Inc. ("Home Depot").[1]

In April 2005, SLR directed Aerofil to use a new Premix, substituting Flexipel for Zonyl. Aerofil states that they were not made aware of this reformulation until June 22, 2005. It was then that they learned the new active ingredient did not contain n-butyl acetate, which has a chemical smell alerting the user to potentially harmful fumes. Plaintiff contends Aerofil was aware of the change by February 2005, as Aerofil was required to have a material safety data sheet ("MSDS") for every hazardous chemical it receives. The MSDS for Flexipel included instructions not to aerosolize. Aerofil aerosolized Flexipel as a component of SNS. Plaintiffs contend Aerofil never inquired what was in Flexipel, never inspected it, and never tested it. Plaintiffs also argue that Aerofil never notified customers that the labeling was inadequate. Plaintiff further asserts that Aerofil continued to manufacture batches of SNS after becoming aware of consumer injuries with use of Flexipel, around June 24, 2005, but added n-butyl acetate to those batches.

---

[1] Defendant Aerofil is the only remaining defendant in this suit.

When Roanoke learned of the reformulation, Roanoke directed SLR to use Zonyl instead of Flexipel.  Aerofil contends that it was not made aware of the change.  Roanoke claimed that the SNS with Flexipel was not manufactured according to its specifications and that if respirable size particles were created, it had to be the result of the aerosolizer not correctly aerosolizing the product.  On July 13, 2005, Roanoke recalled SnS batches containing Flexipel, including the can used by Plaintiffs.  The can used by Plaintiff Richard Bergman is marked batch number A11025E, and was packaged in April 2005.  Plaintiffs state that Mr. Bergman used the product in his home on November 19, 2007, and was hospitalized on the same day.  Plaintiffs allege that SNS made with Flexipel is a defective product and caused their injuries.

### III.   STANDARD OF REVIEW

Pursuant to Rule 56(a), summary judgment may only be granted in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The moving party bears the burden of showing no dispute as to any material issue.  *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974).  A dispute must be evident from the evidence in order to deny such a motion.  Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence.  Fed. R. Civ. P. 56(e).  When ruling, the Court must consider the admissible evidence in the light most favorable to the non-moving party.  *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S.

3

372, 380 (2007) (emphasis added).  To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact.  "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).  Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.  *Scott*, 550 U.S. at 380.

## IV.     ANALYSIS

### A.     Products Liability/Product Defect

"A manufacturer has a duty to design its product so as to eliminate any unreasonable risk of foreseeable injury."  *Fisher v. Kawasaki Heavy Indus., LTD*., 854 F. Supp. 467, 468 (E.D. Mich. 1994).  Manufacturers do not act as insurers indemnifying any and all injuries arising out of the use of their products.  *Prentis*, 421 Mich. at 682-83.  The Sixth Circuit has interpreted Michigan case law to require Plaintiff to demonstrate the following criteria in order to establish a prima facie case of design defect, known as the risk utility balancing test:

1. That the severity of the injury was foreseeable by the manufacturer;
2. That the likelihood of occurrence of her injury was foreseeable by the manufacturer at the time of distribution of the product;
3. That there was a reasonable alternative design available;
4. That the available alternative design was practicable;
5. That the available and practicable reasonable alternative design would have reduced the foreseeable risk of harm posed by defendant's product; and
6. That omission of the available and practicable reasonable alternative design rendered defendant's product not reasonably safe.

4

*Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 738 (6th Cir. 2000).  Additionally, in order for a plaintiff to prevail in a cause of action against a manufacturer alleging injury from a defective product, as well as for breach of an implied warranty, the plaintiff must establish "a defect attributable to the manufacturer and causal connection between the defect and the injury or damage . . . ."  *Piercefield v. Remington Arms Co.*, 375 Mich. 85, 98-99, 133 N.W.2d 129 (1965).  The jury may infer a defect in the product from circumstantial evidence.  *See Caldwell v. Fox*, 394 Mich. 401, 410, 231 N.W.2d 46 (1975).

"Under Michigan products liability law, as part of its prima facie case, a plaintiff must show that the manufacturer's negligence was the *proximate cause* of the plaintiff's injuries." *Skinner v. Square D Co.*, 445 Mich. 153, 162 (1994).  To prove proximate cause, a plaintiff must demonstrate cause in fact, "showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred'" and legal cause, "examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences."  *Id.* at 162-3.

Aerofil argues that summary judgment is appropriate, as Plaintiff cannot prove that Aerofil should have known of the danger of the reformulated SnS, nor that Aerofil altered the formula for SnS. Aerofil maintains that it had no role in the formula change.  Aerofil asserts that no experts have opined that Aerofil was in any way negligent.  Aerofil admits it had a duty to safely package SnS, but contends it did so.  Aerofil contends that on February 24, 2005, it was notified of a change of supplier for the active ingredient in SnS by SLR, and informed that there was no need for a new MSDS because it was the same product.  *See* Ex. K to Def.'s Mot. for Summ. J. on All Counts, at 1355:7-1356:3; *see also id.* at Aerofil Ex. 1, Bell v. Roanoke. Aerofil states that there is no proof that Aerofil knew SRS had been reformulated.

5

Aerofil does not dispute that SnS with Flexipel is defective and unreasonably dangerous. Pls.' Resp, to Statement of Undisputed Material Facts By Def, Aerofil Technology, Inc. and Pls.' Statement of Additional Facts, Ex 1 to Pls.' Resp. to Def.'s Mot. for Summ. J. at 18. Aerofil does not dispute that it is a manufacturer of SnS. Plaintiffs maintain that "Aerofil knew there had been a change in the formula for SnS by February 2005, had received the MSDS for the new component part by May 2, 2005, at the latest, and knew the new product was called Flexipel by June 25, 2005." *Id*. The MSDS included instructions not to aerosolize the product.

Plaintiffs have demonstrated a genuine issue of material fact as to whether the injuries were foreseeable by Aerofil, and summary judgment on Count I is inappropriate.

**B.    Negligence**

Plaintiffs allege that Defendant was negligent in manufacturing SnS with Flexipel. Under Michigan law, negligence is defined as "conduct involving an unreasonable risk of harm." *Moning v. Alfono,* 400 Mich. 425, 433 (1977). "To establish a prima facie case of negligence, a plaintiff must prove: (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, (3) the defendant's breach caused the plaintiff's injuries, and (4) the plaintiff suffered damages." *Komalski v. St. John's Lutheran Church*, 261 Mich. App. 56, 60 (2004).

Aerofil argues it had no duty, and therefore, no liability, for negligence in marketing with faulty instructions; negligent labeling; negligent labeling with specific defects notes; failure to create a safe alternative design; vague warnings; and failure to adequately inspect for safety. Aerofil claims its only duty involved packaging SnS in a spray can under pressure, and that there is no evidence that Aerofil played any role in designing the instructions or warnings, or recalling batches at SLR's request. Aerofil further argues that there is no evidence that Aerofil had access to the MSDS instructing it not to aerosolize Flexipel at the time it aerosolized the product.

6

Aerofil claims to have operated under the belief that it was using the same formula, provided by a different supplier. As stated above, a genuine issue of material fact exists as to when Aerofil received the MSDS for Flexipel. In addition, Aerofil contends the MSDS would only apply to Flexipel, and not SnS with Flexipel, as they are two different substances. Plaintiff argues that even though the MSDS was for a component part, this would not diminish the risk in the final product, and refers to its own expert testimony by Roger Wabeke that "the fact this component was part of a larger finished product would not diminish the risks set forth in the MSDS for this component." Pls.' Resp, to Statement of Undisputed Material Facts By Def, Aerofil Technology, Inc. and Pls.' Statement of Additional Facts, Ex 1 to Pls.' Resp. to Def.'s Mot. for Summ. J. at 12. Plaintiffs have demonstrated a genuine issue of material of fact as to whether Aerofil negligently packaged SnS with Flexipel and Aerofil has conceded that it had a duty to package SnS under pressure. Summary judgment is improper on the negligence claim.

      **C.**     **Michigan Consumer Protection Act**

Under the MCPA, "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful . . . ." MICH. COMP. LAWS § 445.903(1). However, the MCPA does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." MICH. COMP. LAWS § 445.904(1)(a).

Aerofil argues that the MCPA does not apply here as a matter of law because it applies to transactions, and there was no transaction between Aerofil and Plaintiffs. Plaintiffs correctly note that Aerofil has not referenced any statutory language or case law that supports its interpretation that a "transaction" only occurs when Aerofil sells a product directly to a consumer. As stated above, there is a genuine question of material fact as to whether and when

7

Aerofil knew the formula had changed, whether Aerofil was negligent in selling SnS with Flexipel in an aerosolized can, and whether Aerofil continued using the original formula packaging despite the new active ingredient. Defendant is not entitled to summary judgment as a matter of law on this claim.

### D. Exemplary Damages

Under Michigan Law, exemplary damages are "compensation for injured feelings attributable solely to defendant's bad faith or ill will." *Peisner v. Detroit Free Press*, 421 Mich. 125, 136-7 (1984). "[T]he purpose of exemplary damages is to compensate for injury to feelings so as to render the plaintiff whole." *Offices of Lawrence J. Stockler v. Rose*, 174 Mich. App. 14, 45 (1989). Aerofil contends that it was not negligent, and cannot be found to have operated with a conscious disregard for the safety of the consumers. Aerofil cites its lack of knowledge as to the alteration of SnS as proof of its inability to consciously disregard the safety of the product. Plaintiffs, however, allege that Aerofil mixed additional batches of SnS with Flexipel after it knew that consumers were being harmed by the mixture and failed. Whether Aerofil was consciously indifferent goes to whether it had knowledge of the possible danger associated with Flexipel, which this Court has already determined to be a genuine issue of material fact. Whether Plaintiffs have produced sufficient evidence to determine that exemplary damages are appropriate, and in what amount, remains, at this time, a question of fact for the trier of fact.

### E. Consumer Product Safety Act

The law of the case provides "that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir. 2004). (quoting *Arizona v. California,* 460 U.S. 605, 618 (1983)). The doctrine of the law of the case seeks to prevent the relitigation of issues that are

already settled. *U.S. v. Todd*, 920 F.2d, 399, 403 (6th Cir. 1990). It also applies to a coordinate court's decisions. *Id.* The MDL court's decision that the federal Consumer Product Safety Act does not provide a private right of action for the Plaintiffs is the law of the case. This Court will not reopen this issue. Furthermore, Plaintiffs concede that the MDL court dismissed this claim. Defendants are entitled to summary judgment on this claim.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Aerofil Technology, Inc.'s Motion for Summary Judgment **[Docket No. 48, filed on January 10, 2011]** as to Count I, Count II, Count III, and Count VI is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Aerofil Technology, Inc.'s Motion for Summary Judgment **[Docket No. 48]** as to Count VII is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Supplemental Expert Report **[Docket No. 74, filed May 12, 2011]** is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiff's E.D. Mich. L.R. 16.2 Pretrial Order and for Sanctions **[Docket No. 80, filed June 6, 2011]** is **DENIED**.

**IT IS FURTHER ORDERED** that the parties will meet in conformity with E.D. Mich. L.R. 16.2 and jointly file a final pretrial order due to the Court a week before the final pretrial date of October 31, 2011 at 2:00 p.m.

Dated: September 30, 2011               S/Denise Page Hood
                                        DENISE PAGE HOOD
                                        UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 30, 2011, by electronic and/or ordinary mail.
                                         S/Julie Owens
                                         Case Manager, (313) 234-5160

9